UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Crim. No. 07-305 (EGS) |
| v. : | |
| : | |
| HAROLD TYRONE JONES : | Motions Hearing: March 10, 2008 |
|             Defendant. : | |
| : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION
TO SUPPRESS TANGIBLE EVIDENCE**

      The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes Defendant's Motion to Suppress Tangible Evidence. In support of its opposition, the Government relies on the following points and authorities and such points and authorities as may be cited at a hearing on the motion.

**FACTUAL BACKGROUND**

      On Saturday, July 28, 2007, at approximately 1:30 a.m., Victoria Gipson was standing at 18th Street and Minnesota Avenue, S.E., posing as a prostitute, when she was approached by a four-door Volvo stationwagon with Maryland tags, driven by a heavy set, dark skinned male wearing a black T-shirt. The man in the car approached the apparent prostitute and stated "Get in." She responded "You have $20?" The man replied "Yeah, what you trying to do?" The prostitute told him that she could "suck [his] dick for that." The defendant told her to "get in," but the prostitute instead directed him to "drive down this street" because her "house is on the end."

      Unbeknownst to the man, who was later identified as the defendant, the person with whom he was speaking with was actually a Metropolitan Police Department officer who was acting as bait in a highly structured "prostitution reversal" operation. As part of this operation, Sergeant Matthew Nickerson was acting as the "eyes" – in other words, he was observing the entire interaction between

the defendant and Officer Gipson.  When the defendant agreed to pay money to Officer Gipson in exchange for a sexual service, she gave a prearranged signal to Sergeant Nickerson.

Sergeant Nickerson, in turn, radioed a description of the defendant and his car to a separate set of officers who were acting as the arrest team.  As the defendant drove away from Officer Gipson, Officers Duncan Bedlion and Johnnie Barnes pulled behind him in a marked cruiser and turned on their emergency lights.  The defendant pulled to the curb near the intersection of Q and 19th Streets, S.E.  These officers asked him to step out of the vehicle.

Once the defendant was out of his vehicle and in plain sight, Officer Gipson drove by and positively identified the defendant as the person who had solicited her sexual services.  The defendant was placed under arrest.

A search of the defendant's vehicle (which is registered to him) was conducted pursuant to his arrest.  Officers recovered a black plastic shopping bag from the front passenger-side floorboard.  Inside of the bag, they found a sandwich bag with 25 clear blue zips of crack cocaine (15.2 grams); a sandwich bag with 7 blue zips of crack cocaine (24.7 grams); and a leather pouch containing an additional 29.9 grams of crack cocaine and .46 grams of marijuana.  In addition, $1027.29 was recovered from the defendant's wallet, which was found in his pants pocket.

After having been arrested, but prior to being <u>Mirandized</u>, the defendant stated spontaneously "you planted that on me."

## ARGUMENT

The defendant has moved this court to suppress the tangible evidence recovered in this case because the officers who stopped and arrested him were not present during his conversation with the purported prostitute, and they therefore lacked probable cause to arrest him.  (Defendant's Motion

at p. 2, ¶ 3 and at p. 6.)  Additionally he asserts that he was searched after he was arrested and removed from his car, and that the area of the search was therefore out of his immediate control. (Defendant's Motion at p. 2, ¶¶ 7,8, and p. 7).  Because the defendant was properly arrested based on probable cause after he was positively identified by Officer Gipson, and because it was therefore entirely permissible for officers to search his car, the Government asks this court to deny defendant's motion to suppress tangible evidence.

**I.      There Was Reasonable, Articulable Suspicion to Stop the Defendant.**

The Supreme Court case of *Terry v. Ohio*, 392 U.S. 1 (1968) permits police officers to temporarily "seize" or detain a person where the officer has a reasonable, articulable suspicion that "criminal activity may be afoot."  *Id*. at 30.  The officer need not be certain that the citizen is engaged in criminal activity; reasonable suspicion "is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000).  Thus, a *Terry* stop may be conducted simply because of "the need to 'check out' a reasonable suspicion." *United States v. Clark*, 24 F.3d 299, 303 (D.C. Cir. 1994).

Whether an officer has a reasonable articulable suspicion to conduct a stop is determined by the totality of the circumstances.  Courts may not scrutinize each possible factor upon which the officer relied on in a separate and distinct manner.  *United States v. Sokolow*, 490 U.S. 1, 8-9 (1989). "An officer on the beat does not encounter discrete, hermetically sealed facts," and for that reason while "a single factor might not itself be sufficiently probative of wrongdoing to give rise to a reasonable suspicion, the combination of several factors – especially when viewed through the eyes of an experienced officer – may." *United States v. Edmonds*, 240 F.3d 55, 59-60 (D.C. Cir. 2001).

Here Officer Gipson engaged in a conversation with the defendant in which he agreed to pay her money in exchange for her providing him a sexual service. This violated the District of Columbia law prohibiting sexual solicitation, codified at 22 D.C. Code § 2701, and provided probable cause to arrest the defendant. However, rather than divulging her "cover," Officer Gipson gave a signal to Sergeant Nickeron, who was observing the entire exchange. He in turn broadcast a lookout to the arrest team, who was stationed nearby as part of the operation.

The arrest team, acting on Sergeant Nickerson's description of the car and its heading, pulled behind the defendant only a block from where he had engaged in his conversation with the undercover officer. The chain of events that lead to this stop was more than sufficient to give rise to a reasonable articulable suspicion that the defendant was engaged in criminal activity.

## II.      There was Probable Cause to Arrest the Defendant.

After Officer Gipson positively identified the defendant as the individual who had solicited a sexual services from her, there was probable cause to arrest him. Whether the police have probable cause for an arrest is determined by viewing the totality of the circumstances from the perspective of a prudent police officer and in light of the police officer's training and experience. *Illinois v. Gates*, 462 U.S. 213, 230-32 (1983). Probable cause exists where the arresting officer possesses information "sufficient to warrant a prudent [person] in believing that the [suspect has] committed or [is] committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964); *see also United States v. Green*, 670 F.2d 1148, 1152 (D.C.Cir.1981). "Conduct which appears innocent to a lay person may have entirely different significance to an experienced narcotics officer." *United States v. Hicks*, 752 F.2d 379, 384 (9th Cir.1985). Moreover, "a combination of factors may establish probable cause

even if each factor standing alone is insufficient." *United States v. Halliman*, 923 F.2d 873, 881 (D.C.Cir.1991).

Here Officer Gipson had personally engaged in a conversation with the defendant in which he had offered to provide her with $20 in return for a sexual service. During this conversation, Officer Gipson had an ample chance to observe the defendant and the car in which he drove. After reaching the agreement, she directed him to drive down the block to her house. He acquiesced, and was headed in the right direction when he was stopped by the police. After being stopped by police, Officer Gipson rode past the defendant and again observed him. Only after she positively identified him as the person with whom she had engaged in the illegal conversation was he arrested.

**III.    The Search of the Defendant's Car Was Consistent with the Fourth Amendment.**

The search of the defendant's car incident to his arrest, and the subsequent seizure of the drugs from within the car, were consistent with the Fourth Amendment.

In *New York v. Belton*, 453 U.S. 454 (1981), the Supreme Court held that when a police officer has made a lawful custodial arrest of an occupant of an automobile, the Fourth Amendment allows the officer to search the passenger compartment of that vehicle as a contemporaneous incident of arrest. In Belton, an officer overtook a speeding vehicle on the New York Thruway and ordered its driver to pull over. *Id.* at 455. Suspecting that the occupants possessed marijuana, the officer directed them to get out of the car and arrested them for unlawful possession. *Id.* at 454-55. He searched them and then searched the passenger compartment of the car. *Id.* at 455. In considering these facts, the Supreme Court held that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *Id.* at 460 (footnote omitted).

Next, the Supreme Court considered the case of *Thorton v. United States*, 541 U.S. 615 (2004). In that case, an officer initiated a traffic stop but, before he was able to successfully stop the vehicle, the occupant parked and got out of his car. *Id.* at 617. The officer then parked, stopped the former occupant, and arrested him after finding drugs in his pocket. *Id.* at 618. Incident to the arrest, the officer searched the arrestee's car and found a handgun under the driver's seat. *Id.*

In considering the issue of whether it mattered if the arrestee was already outside of the car upon his arrest, the Supreme Court stated that it "placed no reliance on the fact that the officer in Belton ordered the occupants out of the vehicle, or initiated contact with them while they remained within it. There is simply no basis to conclude that the span of the area generally within the arrestee's immediate control is determined by whether the arrestee exited the vehicle at the officer's direction, or whether the officer initiated contact with him while he remained in the car." *Id.* at 619.

The Court followed a similar rationale, albeit in dicta, in *Michigan v. Long*, 463 U.S. 1032, (1983), where officers observed a speeding car swerve into a ditch. The driver exited and the officers met him at the rear of his car. Although there was no indication that the officers initiated contact with the driver while he was still in the vehicle, the Court observed that "[i]t is clear ... that if the officers had arrested [respondent] ... they could have searched the passenger compartment under *New York v. Belton*." *Id.* at 1035-36.

Here, defendant engaged in an illegal attempt to solicit prostitution from within his car, and then drove less than a block before he was stopped and ultimately arrested by officers. The defendant asserts that the search of his car was unlawful because he had already been removed from the car by officers prior to his arrest, and because he was detained in a police car more than 20 feet away from his car while it was searched. This is simply not the case. The search of the defendant's

care was conducted incident to his lawful arrest, and was fully consistent with the dictates of the Fourth Amendment.[1/]

## CONCLUSION

WHEREFORE, the Government reqpectfully asks this Court to Deny defendant Jones's Motion to Suppress Tangible Evidence.

                                       Respectfully submitted,

                                       JEFFREY A. TAYLOR
                                       United States Attorney

By:     /s/_____
        JOCELYN S. BALLANTINE
        Assistant United States Attorney
        CA. Bar No. 208267
        555 Fourth Street, N.W., Room 4237
        Washington, D.C. 20530
        (202) 514-7533
        Jocelyn.Ballantine2@usdoj.gov

---

[1/]    Moreover, the search of the defendant's person was also conducted pursuant to his lawful arrest.